UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| CARL SPITKO and | : | |
| ELIZABETH GOETZ SPITKO | | |
| Debtor | : | Bankruptcy No. 04-18836F |

_____

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. | : | |
| Plaintiff | : | |
| v. | : | |
| CARL SPITKO and | : | |
| ELIZABETH GOETZ SPITKO | | |
| Defendant | : | Adversary No. 04-0975 |

_____

.................................................

MEMORANDUM

.................................................

Presently before me is the motion of the law firm Heimbach, Spitko &

Heckman (which refers to itself as "HSH") to compel Wachovia Bank to pay fees and

costs associated with a subpoena issued by the latter to the former.  The Wachovia

subpoena sought production of certain documents from HSH in connection with the

latter's pre-bankruptcy representation of the debtors and two companies, Maintech, Inc.

and Sentek, LLC, for which the debtors allegedly were the sole shareholders.  This is the

second discovery dispute between these two parties.  The first concerned the permissible

scope of the subpoena.

After an extensive evidentiary hearing, the following facts were proven.

I.

The discovery dispute arises within the context of the above-captioned adversary proceeding filed by Wachovia seeking a denial of discharge of the debtor-defendants pursuant to 11 U.S.C. § 727(a) and Fed. R. Bankr. P. 4004(a).  Wachovia asserts that Maintech, Inc., a corporation for which the debtors are the sole shareholders, entered into several loan agreements with First Union National Bank, the plaintiff's predecessor-in-interest.  Maintech eventually defaulted on these loans, which were guaranteed by the debtors.  On May 15, 2003, the plaintiff entered judgments by confession against Maintech and the debtors in the amount of $3,563,148.17.[1]  On June 6, 2003, Maintech ceased business, and three days later Sentek commenced business, purportedly with the same assets, employees and customers as Maintech.  Complaint, ¶ 27.

The parties agree that on May 12, 2003, the debtors received a tax refund check as the sole shareholders of Maintech, a subchapter S corporation, in the amount of $374,011 for the tax year 2002.  Complaint and Answer, ¶ 20.  None of the proceeds of the refund check were paid to Wachovia.  Instead, as relevant here, the debtors allegedly used approximately $100,000 of this refund to pay three law firms, including HSH.  The debtors concede that they paid $100,000 to certain law firms but aver that these payments were compensation for legal representation "for Carl and Lisa's individual and corporate entities [sic]."  See Answer, ¶ 21(c).

---

[1]The debtors have scheduled a secured debt of $2.1 million and an unsecured debt of $3,563,148.17 as owing to the plaintiff.

2

The debtors filed the underlying chapter 7 bankruptcy case on June 29, 2004. On October 28, 2004, Wachovia commenced the above-captioned adversary proceeding objecting to the debtors' discharge under sections 727(a)(2)-(5). Concerning HSH, Wachovia contends that the debtors violated section 727(a)(2) in that they transferred, removed, destroyed, mutilated and/or concealed their property by using a portion of their tax refund to pay HSH (where David Spitko, who is the brother of the husband/debtor, is a partner) for services rendered to corporate entities and not to the debtors. This action allegedly occurred within a year of the debtors' bankruptcy filing, and/or occurred within the prior year, as the result of a continuing concealment for the purpose of hindering creditors, and/or remained concealed after the bankruptcy case commenced.

Wachovia also maintains that the debtors failed to preserve certain financial information, including the nature and amount of services rendered by HSH on behalf of the debtors, thereby violating section 727(a)(3) of the Code. The plaintiff further asserts that the debtors failed to satisfactorily explain any loss of assets or deficiency of assets to meet their liabilities, by not disclosing the nature and amount of services rendered by HSH on their behalf, in violation of section 727(a)(5) of the Code.

In their answer to the complaint, the debtors denied that they are not entitled to a chapter 7 bankruptcy discharge. As to the allegation that they failed to retain information regarding the services rendered by the law firms that had received the proceeds of their tax refund, the debtors answered: "Copies of legal bills are available for review by the Trustee indicating that the services were appropriate." See Answer, at ¶ 48(h).

3

Wachovia commenced discovery and ultimately issued an amended subpoena to HSH in April 2005, demanding production of documents concerning legal services provided by HSH to the debtors, Maintech or Sentek, from April 2002 to the date of the bankruptcy filing, including invoices and billing statements. Also included in the production request were pleadings, correspondence, briefs, memoranda, motions, leases, contracts and agreements relating to these debtors or the two corporations. Wachovia, however, did not seek any pleadings concerning litigation to which it was a party. Moreover, HSH was to exclude production of documents that were privileged or constituted attorney work-product.

After service of the amended subpoena, HSH and Wachovia's counsel began communicating via e-mail. HSH informed Wachovia's attorneys that it viewed the document request to be extensive and time-consuming, and it would be seeking reimbursement for its time and expense in compliance. Specifically, HSH mentioned an hourly rate for attorneys of $175.00 and one of $17.50 for secretaries, plus a photocopying charge of $0.15 per page. Ex. M-9. Wachovia's counsel responded by agreeing to reimburse HSH for reasonable costs and expenses. Ex. M-3. Upon further communication, and with HSH informing plaintiff's counsel that the firm did not engage any paraprofessionals, Wachovia's attorney sent the following e-mail message to HSH:

> Based upon your representations, we will pay your hourly rate. However, we request that you be fair and reasonable with regard to the time expended reviewing, redacting, and copying all documents. We reserve our rights with regard to the issue of "reasonable costs and expenses." Based upon the modified time periods in the subpoena, it is hopeful that the amount of time and expenses incurred will be considerably less than anticipated.

Ex. M-2.

4

HSH then sent the following e-mail reply to Wachovia's counsel:

> Yes, we understand that our charges must be fair and
> reasonable.  To try to avoid difficulties, when we tell you the
> cost, we will forward to you a document that will resemble an
> invoice with some documentation each day what we did for
> what time . . . .  Further, as we go through the process,
> through e-mail I will ask you whether you want certain things
> photocopied ... such as brochures about laminators in our
> possession.  I will confirm all of today's understandings in a
> separate e-mail . . . .

Ex. M-4.  No confirmation e-mail message was thereafter sent by HSH.  2 N.T. at 78.

HSH then reviewed the documents in its files it believed were requested by the subpoena, and removed or redacted those documents protected by the attorney-client privilege and the attorney work-product doctrine.  1 N.T. at 53.  Sean Hart, Esquire, a partner in the firm, performed most of the review and redaction of HSH's files.  Ex. M-5; 1 N.T. at 30-31; 3 N.T. at 6.  He also redacted billing statements that had been sent to the debtors and/or their companies, so as to remove any reference to privileged communications.  3 N.T. at 6-7, 42.  At some point, Mr. Hart consulted with David Spitko, Esquire, the attorney at HSH who performed most of the services for the debtors and for Maintech and Sentek, to determine whether certain documents should be classified as privileged.  Id. at 42-3.

Some of the actions taken by HSH in compliance with the production request are now challenged by Wachovia.  For example, HSH reviewed and copied certain documents contained in its Peter Melle litigation file without regard to the date restriction in the subpoena: April 2002.  Ex. M-17; 3 N.T. at 32-33.  Mr. Hart stated that all of the documents were produced because the case involved litigation that was pending at the time of the production of the documents.  3 N.T. at 32-33.  Indeed, there were a

number of documents reviewed and photocopied that predate April 2002.  Id. at 35.  Mr.

Hart explained that he decided that it would take him less time to produce all of the

documents concerning this litigation then to try to sort them out by date.  Id. at 47.

Furthermore, Mr. David Spitko attempted to comply with the subpoena

request by creating a list all of his e-mail messages with the name of the corresponding

party but without the subject line, in order to more quickly identify those e-mails that

were privileged and those that were not.  Ex. M-8; 3 N.T. at 31, 58-60.  He also testified

that he believed that this action would be more cost-effective than reviewing each of the

2,000 stored e-mails.  3 N.T. at 58-60.  However, creating such a list required his study of

the e-mail software program, and thus it took several hours to create such a list and to

print it out.  Id. at 59.  Mr. Spitko did conclude that certain e-mails were not privileged

and printed them out for review and production.  2 N.T. at 106.

On April 28, 2005, Mr. Spitko met with Mr. Hart to review some

"questionable" documents that Mr. Hart had noticed contained Mr. Spitko's handwriting

and that he, Mr. Hart, did not immediately understand.  1 N.T. at 30-31, 33; 2 N.T. at 81.

All but one of these documents concerned the litigation between Wachovia Bank and the

debtors.  2 N.T. at 88-89, 92.  Wachovia specifically excluded those documents from the

scope of its subpoena.  Ex. M-1.  Mr. Spitko instructed his secretary not to copy these

documents, but they were inadvertently copied nonetheless.  2 N.T. at 89; 3 N.T. at 38.

On April 19, 2005, Mr. Hart sent an e-mail to Mr. Kevin Burke, counsel for

Wachovia, stating:

Kevin,

In one of the files that is responsive to your request, De Lange
Laden v. Maintech and Carl Spitko, there are several binders

6

> of several hundred pages regarding the specs of the products
> that were the subject of the lease giving rise to that case.  Also
> there are promotional CDs as well as general advertising
> material.  Much of it is in color and 2 sided.  Do you want
> this?  If so, we probably don't have the capacity to copy it and
> will have to send it to an outside vendor for copying.  Please
> let me know. Thanks.
> Sean

Ex. M-16.

> On April 22, 2005, Mr. Burke wrote Mr. Hart the following message:
>
> Wachovia and the Defendants are required to submit a joint
> pretrial memorandum on April 29, 2005.  We intend to
> include and list at least some of the documents that you are
> producing as trial exhibits in this joint memorandum.  Can
> you give me an idea as to when you will produce the
> documents.  Thanks.
> Kevin

Ex. M-33.

Mr. Hart responded that "[t]he modified subpoena states docs must be

produced by May 2, 2005 . . . .  All that I can say is that I will do my best to have it

completed before next Friday.  I will let you know early next week how it is progressing."

Id.

On April 28, 2005, Mr. Burke wrote to Mr. Hart and asked for an update of

the progress of the document production.  Id.  Mr. Hart responded:

> Please allow this email to confirm that we have agreed that
> our firm will not produce documents directly related to any
> actions brought by Wachovia against Carl Spitko, Lisa Spitko,
> Maintech Inc., Sentek LLC, and/or BTR.  Additionally, any
> disclosure of any privileged or protected information or
> document in response to Wachovia's subpoena is inadvertent
> and not intended to waive any privilege or protection.

Id.; Ex. R-1.

Then Mr. Burke replied to Mr. Hart: "Do you have an invoice for the charges thus far? If possible, I would like to send a courier to pick up the documents today." Ex. M-33. Mr. Hart answered that "[t]he invoice for what has been done as of the end of the day yesterday (4/28/05) totals $7,022.55 and we have an invoice outlining the time spent. Currently, there are 2 banker's boxes of documents. If I had to estimate, there [are] probably 2 more to go depending on the emails . . . . Please let me know how you want to proceed . . . ." Id. Mr. Burke responded by asking Mr. Hart to send the invoice by fax transmission. In a later communication, Mr. Burke stated that he did not anticipate that Wachovia would collect from HSH the subpoenaed documents that day. Id.

A copy of the invoice from HSH was faxed to Mr. Burke on April 29, 2005. Ex. M-34. This invoice identifies an amount due of $7,022.55. Ex. M-34. It states that Mr. Spitko spent 3.5 hours in connection with the subpoena and Mr. Hart spent 29.30 hours; services for both attorneys were billed at $175.00 per hour. Id. at 3. Additionally, the invoice itemizes 29.5 hours of secretarial time in copying the documents, to be reimbursed at $17.50/hr, totaling $516.25. Id. The invoice also bills Wachovia for 5,062 pages copied at $0.15 per page, aggregating $759.30, plus an additional $7.00 for a 3-ring binder. Id.

HSH subsequently amended the invoice to include additional time spent by the two attorneys. Ex. M-5. This amended invoice requested reimbursement totaling $9,850.55 in costs and fees. Ex. M-5. Mr. Spitko's time increased to 7.5 hours and Mr. Hart's time rose to 32.30 hours. Id. An additional hour of secretarial copying time ($17.50), and a fee for copying another 208 pages of documents at $0.15 per page were

8

also added.  Id.  The amended invoice identifies another charge for $31.80 due to:

"Vendor ALPHA- GRAPHICS PRINTSHOP; Scan to pdfs 17 pages 2 files."  Id.

Furthermore, HSH also seeks reimbursement for 8.70 hours of attorney time

for preparation and filing of the instant motion to compel at $175/hr., totaling $1,522.50.

Id.

On May 5, 2005, Mr. Hart wrote to Mr. Burke: "As a follow up to our

earlier conversation, the documents have been ready since Monday, May 2, 2005, in

compliance with Wachovia's subpoena to HSH and have been waiting to be picked up.

Please keep posted as to payment and your courier."  Id.  Wachovia never recovered the

documents it subpoenaed from HSH.  Indeed, Wachovia's counsel stated in open court

that it is no longer interested in receiving the documents and it does not believe it should

have to pay HSH for its time in preparing the documents for production.  1 N.T. at 20.


II.


The present motion to compel filed by HSH against Wachovia demanded

reimbursement of costs and fees associated with compliance with the amended subpoena

in the amount of $8,247.55.  As a nonparty to this lawsuit, HSH contends that it is entitled

to relief under Fed. R. Civ. P. 45, and also by express agreement of the parties.

Moreover, HSH alleged that it spent 8.7 hours preparing its motion to compel and sought

an additional $1,603.00 from Wachovia in connection thereto.  Thus, the total demanded

from Wachovia originally was $9,850.55.  Wachovia's answer to the motion might be

read to contain an implied acknowledgement that some fees and costs were recoverable, but that the amount sought by HSH was unreasonable.

After an extensive and somewhat acrimonious hearing held on HSH's motion, the positions of the parties altered. HSH now demands reimbursement of $8,615.05 for subpoena compliance plus $13,956.04 as a sanction for prosecution of its motion. Moreover, it seeks a determination that further fees should be awarded in connection with any future time HSH may spend in connection with this motion, including time spent in connection with a possible appeal.

In reply, Wachovia offers numerous arguments opposing any relief in favor of HSH. First, it contends that the hourly rate of $175 charged by HSH is unreasonable, because this rate is higher than the rate HSH charged Maintech, Sentek and other firm clients. Second, Wachovia maintains that HSH charged Wachovia for reviewing and copying documents that were not within the scope of the subpoena. Third, it complains that HSH failed to produce documents connected with two lawsuits identified in the HSH's billing records. Fourth, Wachovia asserts that the documents copied by HSH and made available to it were of no benefit, as they were not produced in sufficient time to be used at trial. Fifth, plaintiff argues that the time spent by Mr. Hart reviewing the documents and redacting the billing statements was unreasonably long. Sixth, Wachovia contends that HSH improperly seeks reimbursement for time spent by Mr. Spitko in learning e-mail computer software. Seventh, plaintiff believes that 30.5 hours of secretarial time to copy 5,270 pages of documents is unreasonably high. Eighth, it challenges 1.20 hours for correspondence and/or communications between Wachovia and HSH as unrelated to subpoena compliance. And ninth, Wachovia opposes any

reimbursement connected with the motion to compel.  It maintains that this extensive

litigation was caused by HSH's unreasonable demands.

HSH is not a party to the litigation between the debtors and Wachovia.  Fed.

R. Bankr. P. 7034 incorporates Fed. R. Civ. P. 34(c), which states: "A person not a party

to the action may be compelled to produce documents and things or to submit to an

inspection as provided in Rule 45."  Fed. R. Bankr. P. 9016 incorporates Fed. R. Civ. P.

45. Fed. R. Civ. P. 45(c)(2)(B) provides that once an objection to a subpoena is filed:

> [T]he person serving the subpoena may, upon notice to the
> person commanded to produce, move at any time for an order
> to compel the production.  Such an order to compel
> production shall protect any person who is not a party or an
> officer of a party from significant expense resulting from the
> inspection and copying commanded.

The Advisory Committee Note to Rule 45 (1991) further discusses the

protection of a nonparty from significant costs.  It notes that a court may either fix those

reimbursement costs in advance or "leave uncertain costs to be determined after the

materials have been produced, provided that the risk of uncertainty is fully disclosed to

the discovering party."

In this dispute, my earlier memorandum and order compelling HSH to

produce certain documents subpoenaed by Wachovia noted that Wachovia might be liable

for reimbursement costs, citing Williams v. City of Dallas, 178 F.R.D. 103 (N.D. Tex.

1998).  Thus, Wachovia was made aware of its potential reimbursement liability before it

served its amended subpoena upon HSH.  Moreover, HSH made it plain to Wachovia,

both in opposing the original subpoena and in communications sent to Wachovia's

counsel, that it would demand reimbursement due to the extensive nature of the

documents subpoenaed.  Compare McCabe v. Ernst & Young, LLP, 221 F.R.D. 423

11

(D.N.J. 2004) (no reimbursement under Rule 45 where there is voluntary compliance with the subpoena).

In evaluating whether a nonparty may successfully demand reimbursement for involuntary subpoena compliance, the Williams court considered "non-exclusive factors [such] as the scope of the discovery, the depth of the invasion involved in the request, the extent to which the producing party must separate responsive information from privileged or even irrelevant material, and the reasonableness of the expenses involved in making the production." Id. at 113. It is also understood that reimbursable expenses of a nonparty under Rule 45 are limited to significant expenses. See generally R.J. Reynolds Tobacco v. Philip Morris, Inc., 29 Fed. Appx. 880, 883 (3d Cir. 2002) (non precedential) ("Significant expenses must be borne by the party seeking discovery."); Linder v. Calero-Portocarrero, 251 F.3d 178, 182-83 (D.C. Cir. 2001). Moreover, "a non-party can be required to bear some or all of its expense where the equities of a particular case demand it." In re Honeywell International, Inc., 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (quoting In re Law Firms of McCourts and McGrigor Donald, 2001 WL 345233, at * 1 (S.D.N.Y. 2001)).

Before applying those factors to any reimbursement request, a court should insure that the individual or entity seeking recovery is indeed a disinterested observer to the underlying litigation, and that the equities do not favor the party seeking discovery.

> 'Protection from significant expense' does not mean that the requesting party necessarily must bear the entire cost of compliance, particularly where, as here, doubt has been cast on the subpoenaed party's status as a non-party. While the drafters of new Rule 45 clearly intended to expand the protection for non-parties such as disinterested expert witnesses, see Advisory Committee Note to 1991 Amendment, there is no indication that they also intended to

> overrule prior Rule 45 case law, under which a non-party can
> be required to bear some or all of its expenses where the
> equities of a particular case demand it. [citation omitted]
> Under that case law, it is relevant to inquire whether the
> putative non-party actually has an interest in the outcome of
> the case, [citation omitted]; whether it can more readily bear
> its costs than the requesting party, [citation omitted]; and
> whether the litigation is of public importance.

In re Exxon Valdez, 142 F.R.D. 380, 383 (D.D.C. 1992); see In re Application of Law

Firms of McCourts and McGrigor Donald, 2001 WL 345233, at * 1; In the Matter of First

American Corp., 184 F.R.D. 234, 242 (S.D.N.Y. 1998); Linder v. Calero-Portocarrero,

180 F.R.D. 168, 177 (D.D.C. 1998).

Thus, HSH may not be entitled to reimbursement of its significant expenses

if it is not a disinterested party to the objection to discharge litigation pending in this

court. In that regard, David Spitko, Esquire is the brother of the debtor, Mr. Carl Spitko.

HSH provided legal services for the debtors and their businesses due to this fraternal

relationship. As noted earlier, Wachovia's complaint in this adversary proceeding alleges

that the debtors/defendants "transferred, removed, destroyed, mutilated and/or concealed

property of the Defendant by . . . using in excess of $100,000 of the Tax Refund to serve

as a retainer for three law firms" including HSH. Complaint, ¶ 42. A party may not be

disinterested under Rule 45 "[w]here a nonparty was 'substantially involved in the

underlying transaction and could have anticipated that [the failed transaction would]

reasonably spawn some litigation,' [citations omitted] . . . [and] where the nonparties

were 'involved in litigation . . . arising out of the same facts.'" In the Matter of First

American Corp., 184 F.R.D. at 242.

Upon consideration, I conclude that the familial and legal relationships

between HSH and the debtors are not enough to cause HSH to lose its status as a

disinterested nonparty in litigation concerning the debtors' entitlement to a bankruptcy discharge. Wachovia is not seeking even indirect relief against HSH. Compare In re Honeywell International, Inc., 230 F.R.D.at 303 (holding that the financial auditor of the defendant in a securities class action is not a disinterested third party); In re Exxon Valdez, 142 F.R.D. at 383-84 (a trade association that received a significant portion of its income from the defendants was not a "pure non-party witness" under Rule 45).

Nor do the equities favor Wachovia regarding reimbursement. HSH is a small firm, probably less able to absorb the costs involved in compliance than Wachovia. Wachovia is the plaintiff in litigation that it believes will aid it in recovery of its multi-million dollar judgment against the debtors. And the documents sought by plaintiff's subpoena were extensive and known to be so prior to service of the amended subpoena.

I therefore must analyze HSH's specific requests for reimbursement and Wachovia's myriad of challenges thereto.

III.

Wachovia contends that HSH should not be reimbursed at the rate of $175/hr. for the attorney review and redaction of documents. Several courts have held that a nonparty can be reimbursed for work attorneys performed in connection with the production of documents. See In re Subpoena Duces Tecum Served on Duke Energy Corp., 2005 WL 2674938, at * 7 (W.D.N.C. 2005); Pacific Gas and Electric Co. v. Lynch, 2002 WL 32812098, at * 3-4 (N.D. Cal. 2002); In the Matter of First American Corp., 184 F.R.D. at 241 ("A nonparty's legal fees, especially where the work benefits the

14

requesting party, have been considered a cost of compliance reimbursable under Rule 45(c)(2)(B)."); Williams v. City of Dallas, 178 F.R.D. at 113 (reimbursement of attorney's fees); Kisser v. Coalition for Religious Freedom, 1995 WL 590169, at * 1 (E.D. Pa. 1995) ("Defendants shall reimburse Mr. Smith for his reasonable attorney's fees incurred in searching for responsive documents.").

However, several courts have noted that it is not always necessary for an attorney to review documents and redact information.  It is a task that may sometimes be accomplished by a less-highly compensated employee.  See Romano v. United Parcel Service General Services Co., 1996 WL 684467, at * 6 (D. Or. 1996) ("An attorney is ordinarily not necessary for tasks such as sorting through OSHA 101 reports and redacting identifying information.  A legal assistant, or clerical workers supervised by a legal assistant, should be able to do this work."); Kahn v. General Motors Corp., 1992 WL 208286, at *2 (S.D.N.Y. 1992) ("Ordinarily, the retrieval and evaluation of documents should be done by the lowest-level person consistent with accurate and reliable identification of the material called for and well-reasoned judgments concerning whether claims of privilege should be asserted."); Cantaline v. Raymark Industries, Inc., 103 F.R.D. 447, 453 (S.D. Fla. 1984) (disallowance for attorney time in reviewing documents).

There may be circumstances, however, where attorney time is needed to review documents prior to production.  Thus, the court in Kahn allowed compensation of senior counsel's time in reviewing documents and redacting materials when there were no junior attorneys to perform those tasks.  Kahn v. General Motors Corp., 1992 WL 208286, at *2.

Even if it was appropriate for an attorney, rather than a paraprofessional, to review and redact the subpoenaed documents, the nonparty seeking reimbursement has the burden to demonstrate that the hourly rate it seeks for such services is reasonable.  In general, factors for determining reasonableness of the hourly rates include "legal education, professional experience, number of years of practice, areas of specialization . . . ." Id. at * 3.  It is the attorney's responsibility to make "some factual showing that he is worthy of the rate he charges."  Id.

In this instance, HSH contends that it employs no paraprofessionals, the bulk of the review work was done by Mr. Hart, the most junior attorney in the four-person firm (albeit a recent partner), and the hourly rate requested of $175 is quite modest compared with the hourly rates of other law firms in the area, including Wachovia's counsel.  Alternatively, HSH argues that Wachovia agreed to this reimbursement rate and such an agreement is now binding.

It is understood that parties to discovery matters can reach private agreements regarding reimbursements.  One court noted that "[p]rivate agreements save time and expense for the parties and valuable court time as well.  Therefore, it is in the interest of justice for this Court to enforce such agreements, under its inherent authority, even though they are not mentioned in Rule 45." Angell v. Shawmut Bank Connecticut National Ass'n, 153 F.R.D. 585, 590 (M.D.N.C. 1994); see In re Corso, 328 B.R. 375, 384 (E.D.N.Y. 2005) (noting that an agreement renders unnecessary a party's objection to a subpoena as a condition precedent to reimbursement under Rule 45).  Several other courts have allowed reimbursement of costs when the parties contracted for such a result. See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation, 1995 WL 573428, at

*2 (N.D. Ill. 1995); In re Goodyear Tire & Rubber Co. Securities Litigation, 1991 WL

172930, at * 2 (N.D. Ohio 1991); Celanese Corp. v. E.I. du Pont de Nemours & Co., 58

F.R.D. 606, 609 (D. Del. 1973).

   For example, in Angell there was evidence of an agreement to reimburse

the nonparty entity for reasonable copying costs.  Angell v. Shawmut Bank, 153 F.R.D. at

590-91.  In construing the scope of that understanding, the district court explained:

"Nothing else appearing, reasonable copying costs include the services of employees who

must select the documents and perform the copying. . . .  Such costs conceivably could

include work performed by attorneys."  Id. (citation omitted).  However, if reimbursement

costs will be extensive, it is preferable that advance notice, including the fact that

attorneys will be used in the review and production of documents, be given to the party

seeking discovery.  Id. at 590.  As the subpoenaed party in Angell did not provide notice

that attorneys would be used in the production of documents, the district court held that

the "petitioners cannot recover attorney's fees or production costs at attorney fee rates."

Id. at 591.

   In this dispute, the evidence demonstrates that Wachovia and HSH reached

an understanding that attorneys would be involved in subpoena compliance, as well as the

hourly rates for which they would seek to be reimbursed.  See Ex. M-3.  Although Mr.

Burke initially questioned whether the use of attorneys was warranted, upon explanation

by HSH, Wachovia agreed to reimburse HSH attorneys to perform the work at the rate of

$175/hr.  Ex. M-2.  Wachovia appears also to have agreed to reimburse HSH $17.50/hr.

for secretarial time to copy documents and $0.15 per page for each copy.  Id.  Although

Wachovia reserved the right to challenge the reasonableness of these amounts, id., such

reservation was limited to the hours spent or the number of pages copied, not the rates for these services.[2]

Accordingly, in light of the accord reached by these parties, HSH will be reimbursed at $175/hr. for reasonable attorney time spent in subpoena compliance, and $17.50/hr. for reasonable secretarial time in copying documents under subpoena, as well as  $0.15 per copy page.

Wachovia strenuously argues that the amount of time spent by HSH in complying with its subpoena was not reasonable.  One court noted that "[t]he costs sought by the non-party may be unreasonable if they are disproportionate to the demands made; if other persons, similarly situated, would incur lesser costs to comply; or [if there is] proof that a non-moving party and non-party are in collusion to artificially inflate the costs of compliance so as to make the price of litigating the case prohibitive . . . ." Cantaline v. Raymark Industries, Inc., 103 F.R.D. at 450 n.4.

One of Wachovia's complaints is that HSH reviewed and copied documents relating to litigation between Wachovia and the debtors.  The amended subpoena requested "[a]ll Documents, not privileged or protected by the work product doctrine, relating to any lawsuits filed on behalf of or against the Defendants, Sentek and/or Maintech (other than the actions involving Wachovia Bank, National Association) . . . ." Ex. M-1.  This was subsequently reinforced by Mr. Hart's April 28, 2005 e-mail.  See Exs. M-33; R-1.  HSH has conceded that some Wachovia litigation documents were

---

[2]Based upon this agreement, I must decline Wachovia's present suggestion that HSH is not entitled to reimbursement at the rate of $175/hr because that rate was used only for the law firm's larger corporate clients, and not for Maintech and Sentek.  The implication that HSH misrepresented facts in initially disclosing that hourly rate is unwarranted.

inadvertently reviewed and copied.  1 N.T. at 89; 2 N.T. at 66.  Indeed, HSH

acknowledges that 441 pages of Wachovia pleadings were copied and it has agreed to

reduce the cost of the photocopying by $66.15 (441 multiplied by $ 0.15 per page).

HSH's Memorandum of Law at 9.

However, by accidently reviewing and copying these materials, HSH

incurred unnecessary expenses beyond the $0.15/page copy fee.  The amount sought by

HSH in secretarial time should also be reduced.  Exhibit M-5 indicates that 30.5 hours of

secretarial time were required to copy 5,270 pages of documents (or approximately 173

pages per hour).  Since 441 pages should not have been copied, it is appropriate to also

reduce the amount of secretarial time by 2.55 hours or $44.63.

Additionally, Mr. Spitko spent 3.5 hours reviewing the questionable

documents set aside by Mr. Hart, but only one of the non-privileged documents reviewed

did not involve the Wachovia litigation.  Therefore, I find approximately three hours of

review ($525.00) by Mr. Spitko to be unreasonable.

The second challenge that Wachovia makes is that certain documents were

reviewed and copied which predated April 2002.  Ex. M-17.  Wachovia's amended

subpoena of documents noted that it only sought production of documents from April

2002 to the present.  Ex. M-1.[3]  Mr. Hart conceded that documents that predated April

2002 were reviewed and copied relating to the Peter Melle litigation; however he thought

they were relevant, since they involved litigation pending at the time of the subpoena.  3

---

[3]This revised subpoena is in compliance with my order dated April 1, 2005 as to
this provision.

N.T. at 32.  Mr. Hart also opined that it would have taken him more time to segregate the

pre-April 2002 documents than it took to produce all of the documents.  Id.

This explanation is not persuasive. Wachovia's subpoena clearly indicated

that it was only seeking documents beginning after April 2002.  Mr. Hart spent a total of

3.4 hours reviewing documents for attorney-client privilege.  See Ex. M-5.  Little

additional time should have been required to segregate the documents based upon their

date.  Indeed, Mr. Hart, when testifying, was able to identify quickly documents that

predated April 2002, with the exception of the emails and correspondence.  3 N.T. at 34-

36.

The pre-April 2002 documents reviewed by HSH included: a response to a

document request; a complaint; an answer; a praecipe for entry of appearance; three

discovery documents; and some correspondence.  Id.  Additionally, some of the e-mails

produced may have predated April 2002.  Id. at 36.  From my review, it appears that

approximately 750 pages of materials identified by Mr. Hart as predating April 2002 were

reviewed and copied.  Utilizing $0.15 cost per page, a reduction in 750 pages of copying

yields reduced costs of $112.50.  Additionally, the amount of secretarial time involved

would be 4.34 hours (750 divided by 173 pages per hour) for a deduction of $75.95.

Moreover, of the 3.4 hours of time spent by Mr. Hart, about 40% of the

documents fall into the pre-April 2002 category.  This warrants a concomitant reduction

in the time spent to 2.04 hours, or $357.

In addition to these partial reductions, Wachovia complains that there were

no documents produced concerning two lawsuits noted in HSH's billing records.

Therefore, it argues that HSH "breached the Agreement [between itself and Wachovia] by

failing to comply with the requests set forth in the Modified Subpoena." Wachovia's

Findings of Fact and Conclusion of Law, ¶ 41. Wachovia contends that it should be

relieved from any obligation to reimburse HSH for any reasonable costs and fees in

complying with subpoena. (It cites no authority for this contention.)

I will accept <u>arguendo</u> that partial compliance with a subpoena could in

limited instances so diminish the value of the response that equity would support denial of

reimbursement to the nonparty under Rule 45. In this instance, however, Wachovia has

made no such showing. It has not filed any motion to compel production of the purported

missing documents. And, without knowledge that certain documents were not being

produced, Wachovia has never sought possession of any of the subpoenaed documents

that were available, explaining that it was no longer interested in obtaining them.

Under these circumstances, if HSH failed to fully comply with the

subpoena, there was no evidence to suggest that such non-compliance was not

inadvertent, or that Wachovia suffered any prejudice thereby. Accordingly, if certain

documents were not produced, HSH is still entitled to have its reasonable costs

reimbursed for the documents it was willing to produce. <u>See</u> <u>generally</u> <u>Cimina v.</u>

<u>Bronich</u>, 517 Pa. 378, 383 (1988).

In a similar vein, Wachovia argues that HSH's failure to produce by a date

certain the subpoenaed documents reduced their value in prosecuting the adversary

proceeding against the debtors, thus eliminating any liability for reimbursement. Again, I

assume in some instances, such a failure would warrant such relief.

In these circumstances, however, the evidence disclosed that HSH made it

clear that it would coordinate delivery of the subpoenaed documents in May 2005 with

Wachovia's reimbursement of expenses.  See Exs. M-9; M-3.  Some decisions suggest

that a nonparty may condition delivery on the payment of its reasonable costs and fees, as

long the requesting party had advance notice of it.  See In re McCabe v. Ernst & Young,

LLP, 221 F.R.D. at 426; Warshay v. United States, 1999 WL 250777, at *1 (E.D.N.Y.

1999); Tutor-Saliba Corp. v. United States, 32 Fed Cl. 609, 612 (1995).  Wachovia was

so notified; and if it believed that payment in advance of production was improper,

Wachovia could have raised that issue in this court.  It never did so.  Moreover, receipt of

documents in early May 2005 would have been sufficient for use at the later trial.

As it would be inequitable for a plaintiff to issue a discovery subpoena to a

nonparty, agree to pay reasonable expenses to the nonparty, and then, in essence,

unilaterally withdraw the subpoena after significant expenses toward compliance have

been incurred, I cannot sustain this objection to reimbursement.

Wachovia next maintains that HSH should not be compensated for 1.20

hours spent in communications between HSH and Wachovia regarding the production of

documents.  Wachovia states that "[c]harges of this nature are clearly unreasonable

because they are not attributed to actual review, redaction and/or photocopying of

documents requested in the Modified Subpoena. . . . Wachovia did not agree to reimburse

HSH for any costs or expenses beyond the review, redacting and copying of documents."

Wachovia's Post-hearing Memorandum, at 26.

This position overlooks the nature of the communication between counsel.

HSH was informing Wachovia of the substantial nature of its request, its intent to seek

reimbursement and the terms of such reimbursement.  Such communication is

appropriate, for it places the party seeking discovery on notice and affords it the

opportunity to withdraw or reduce the scope of its subpoena if the reimbursement charges will be out of proportion to the value of the documents sought to be discovered. Thus, I find that the communication between HSH and Wachovia's lawyers is a reasonable cost of the production of the documents and one justifying reimbursement from Wachovia.

Next, Wachovia contends that the following time entry by Mr. Spitko is unreasonable: "Work with Outlook to figure out how to list e-mails, print list, review list for e-mails not privileged; print them out; prepare cover sheet." Ex. M-5. This charge is for 4.0 hours of attorney time, or $700.00. The result of Mr. Spitko's review was a 15-page document listing all of the e-mails sent and received by him, with the date and the corresponding party but not the subject line. Ex. M-8. Mr. Spitko subsequently reviewed this list and printed out all of the non-privileged e-mails within the scope of the subpoena. 2 N.T. at 8-9.

There were approximately 2,000 e-mails, and Mr. Spitko expressed the opinion that it would have taken him at least four hours to review each of those documents. 1 N.T. at 58-60. All of the e-mails that were printed and reviewed by Mr. Spitko are contained in Exhibit M-10.

Wachovia notes that Mr. Spitko had an obligation under the subpoena to review and produce all non-privileged documents and produce a privilege log for those documents that were withheld. Instead of reviewing these documents, Wachovia complains that he spent hours learning how to create a list and printing out several e-mails to be reviewed. Upon consideration of this complaint, I conclude that there was a likelihood, given the number of e-mail messages involved, that an individualized review

would have taken at least as long as the method utilized by Mr. Spitko.  Accordingly, I find his time spent on this task to be reasonable and compensable.

Additionally, Wachovia argues that Mr. Hart spent excessive time in reviewing the requested documents.  Mr. Hart spent approximately 31.1 hours to comply with the subpoena, not including the time spent corresponding with Wachovia's counsel (an issue addressed above).  Approximately 23.3 hours are attributed to Mr. Hart's review of the documents (of which 1.36 hours were previously disallowed) and 7.80 hours devoted to the redaction of HSH's billing records for Maintech, Sentek and the debtors. Ex. M-5.  At the hearing held, I was apprised of the extensive number of documents within the scope of the subpoena.  I find that 20 hours of time (or about 2.5 days) spent for review were reasonable and compensable.

Wachovia additionally objects to the 7.8 hours expended redacting HSH's billing records.  Mr. Hart testified that part of his redaction involved speaking with Mr. Spitko and/or consulting the files to determine if the billing record reflected a privileged activity.  3 N.T. at 42-43.  However, Mr. Hart did not maintain separate time entries of his conversations with Mr. Spitko, except for the initial conversation.  See Ex. M-5; 3 N.T. at 46.  Mr. Spitko did not bill Wachovia for any such conversations.  3 N.T. at 44.

Wachovia complains that Mr. Hart should have maintained separate time entries to reflect his consultations with his colleague.  Post-hearing Memorandum at 25. Additionally, it states that it did not agree to reimburse HSH for any conversations between the attorneys to determine if certain billing entries should be redacted.  Id.  From the hearing, it is clear that the conversations were a necessary part of the review and production of the billing records.  Mr. Hart did not have personal knowledge of all of the

transactions represented in the billing statement and therefore needed to consult with Mr.

Spitko and/or additional documents to determine if they were privileged. Id. at 42-43.

Therefore, I find that the 7.8 hours spent by Mr. Hart in redacting HSH's billing records

to be reasonable.

Finally, Wachovia maintains that HSH's copying charges are unreasonably

high. HSH seeks reimbursement for 30.5 hours spent by an HSH secretary to copy the

discovery documents, totaling $533.75. Ex. M-5. Earlier, I reduced this charge by 6.89

hours or $120.58. This leaves 23.61 hours ($413.17) of copying time remaining, or

almost three entire eight-hour work days. However, the attorney time for reviewing and

redacting both the copied documents and other privileged documents that were not copied

was about 37 hours. Obviously, it takes far less time to photocopy a document than it

does to review the document to determine if it is privileged. Upon consideration, I agree

with Wachovia that the amount billed is unreasonable. Wachovia need only reimburse

HSH for secretarial time in the amount of 12 hours ($210.00).

Therefore, based on the reasoning discussed above, I find that HSH is

entitled to reimbursement for the following charges:

> 1) 4,079 pages copied at a rate of $0.15/page totaling
> $611.85;
> 2) 12 hours of secretarial time at $17.50/hr. totaling $210.00;
> 3) Attorney review and redaction at $175/hr. for 33.50 hours
> totaling $5,862.50; and
> 4) Additional miscellaneous charges for a binder and scan to
> pdfs totaling $38.80.[4]

The total recovery granted to HSH is $6,723.15.

---

[4]These charges were not contested by Wachovia.

IV.

Finally, both Wachovia and HSH have sought recovery of their attorney's fees in connection with the hearing on the latter's motion to compel reimbursement.

I note that HSH seeks an award of attorney's fees for prosecuting this motion that is about twice the amount in reimburseable expenses connected with subpoena compliance. While a court awarding a nonparty reimbursement for substantial expenses in compliance with a subpoena under Rule 45 has the discretion to award fees associated with its demand for reimbursement, see Builders Ass'n of Greater Chicago v. City of Chicago, 2002 WL 1008455 (N.D. Ill. 2002); High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 161 F.R.D. 86, 88 (N.D. Cal. 1995), an award of such fees should consider the reasonableness of the position of the party opposing reimbursement, see generally Martin v. Franklin Capital Corp., 2005 WL 3299410 (S. Ct. Dec. 7, 2005), the amount in controversy and the complexity of the dispute, see generally Northwinds Abatement, Inc. v. Employers Ins. of Wausau, 258 F.3d 345, 354 (5th Cir. 2001), as well as the reasonableness of the reimbursement expenses demanded.

Essentially, HSH is seeking reimbursement of almost 80 hours of attorney time to prepare and prosecute its motion for reimbursement. As noted earlier, the amount in controversy was less than $9,000, the issues were not complex and the position of Wachovia that some expenses were inappropriate was not completely without merit. Moreover, the contentiousness of and the length of the hearing were not completely Wachovia's fault.

26

HSH should have been able to competently press its demand for reimbursement in this court with an expenditure of no more than 25 hours of attorney time.  Given its hourly rate of $175, an award of $4,375 is warranted.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| CARL SPITKO and | : | |
| ELIZABETH GOETZ SPITKO | | |
| Debtor | : | Bankruptcy No. 04-18836F |

_____

| | | |
|---|---|---|
| WACHOVIA BANK, N.A. | : | |
| Plaintiff | : | |
| v. | : | |
| CARL SPITKO and | : | |
| ELIZABETH GOETZ SPITKO | | |
| Defendant | : | Adversary No. 04-0975 |

_____

..................................................

ORDER

..................................................

AND NOW, this 20th day of December 2005, for the reasons stated in the accompanying memorandum, it is hereby ordered that Wachovia Bank shall reimburse Heimback, Spitko, and Heckman for compliance with the former's amended subpoena in the amount of $11,098.15.  Payment shall be tendered within twenty days from the date of this order.

_____
BRUCE FOX
United States Bankruptcy Judge

Copies to:

Rosetta B. Packer, Esquire
Kevin J. Burke, Esquire
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103

David Spitko, Esquire
Sean Hart, Esquire
Heimback, Spitko, & Heckman
535 Hamilton Street, Suite 200
Allentown, PA 18101